UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

ROCIO SOLIS,

       Plaintiff,

vs.                                                     Case No._____

OKEECHOBEE SHOOTING SPORTS, LLC,

       Defendant.

_____/

## COMPLAINT

Plaintiff, ROCIO SOLIS ("Solis"), sues Defendant, OKEECHOBEE SHOOTING SPORTS, LLC, and states as follows:

## JURISDICTION

Jurisdiction in this Court is proper under 28 U.S.C. § 1331 as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

Venue is proper in this Court as the Plaintiff resides within the Southern District of Florida and Defendant is a corporation conducting business within the District.

1

**CONDITIONS PRECEDENT**

All conditions precedent to this suit have been met. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which was dual filed with the Florida Commission on Human Relations. Plaintiff received a Right to Sue from the Equal Employment Opportunity Commission dated September 11, 2019, which is attached as Exhibit A, and filed this suit within 90 days of receipt.

**PARTIES**

1. Plaintiff, ROCIO SOLIS, is a citizen of the State of Florida, residing in Okeechobee County.

2. Defendant, OKEECHOBEE SHOOTING SPORTS, LLC, is an incorporated entity having its principle place of business in Okeechobee, Florida; JEFF WAIT ("Jeff") is the owner of OKEECHOBEE SHOOTING SPORTS, LLC; NELSON WAIT ("Nelson") is Defendant's gunsmith and Jeff's father.

**FACTUAL ALLEGATIONS**

3. Plaintiff is a female of Mexican descent.

4. Plaintiff was employed by Defendant as an Office Manager from June 22, 2015 to July 15, 2019.

5. From June 22, 2015 to July 15, 2019, comments regarding Plaintiff's sex and national origin were made to Plaintiff regularly.

6. Specifically, during Plaintiff's employment with Defendant, Nelson made derogatory comments to Plaintiff regarding the Mexican nationality, stating, "I love the Mexican people - they work pretty good on the lawn."

7. During Plaintiff's employment with Defendant, Nelson explained to Plaintiff how the reason for hepatitis outbreaks is "Mexicans don't get shots."

8. During Plaintiff's employment with Defendant, Nelson made comments of a sexually suggestive nature to Plaintiff, stating on numerous occasions, "Since business is slow, why don't you wear a bikini and stand on the side of the road[?]." Nelson would also make this comment even on busy days at the range.

9. During Plaintiff's employment with Defendant, Nelson made a comment of a sexually suggestive nature to Plaintiff, sometimes repeatedly throughout any given day, stating, "Come here, little girl – want a piece of candy[?]."

10. During Plaintiff's employment with Defendant, Nelson informed Plaintiff and other co-workers that when his wife calls, he makes her believe

that he is alone with Plaintiff in the shop with the sole purpose of making his wife jealous. Accordingly, Plaintiff would feel uncomfortable around Nelson and his wife.

11. During Plaintiff's employment with Defendant, Nelson offered his assistance in bringing Plaintiff's family members from Mexico to America through military connections he made during his service.

12. On or about June 2019, Jeff Wait, owner of Okeechobee Shooting Sports, LLC, made the following comments to Plaintiff: "You can get whatever men you want"; "If Rosy (Solis) gave me a chance, I would go for it"; "Larry (Solis' husband) must be doing something right for her to be with him."

13. During Plaintiff's employment with Defendant, Jeff mentioned to Plaintiff and others that he told his wife not to be jealous when she saw Plaintiff and that he didn't hire her for her looks, but she looked good on paper.

14. During Plaintiff's employment with Defendant, Jeff would refer to all Puerto Ricans and Cubans as being "loud and ridiculous people."

15. During Plaintiff's employment with Defendant, Jeff would refer to African Americans as "lazy, trashy, ghetto and nasty people."

16. Plaintiff communicated to Jeff on more than one occasion she was upset and uncomfortable with the nature of the comments being made to her on a weekly basis, but the comments continued.

17. As Office Manager, Plaintiff's scope of responsibilities was broad enough to include handling duties normally managed by a Human Resources representative.  Accordingly, she was unable to report the derogatory comments made by Jeff and Nelson regarding her sex and national origin.

18. On certain occasions during Plaintiff's employment, Jeff apologized to Plaintiff for Nelson's improper behavior, but the comments continued.

19. During Plaintiff's employment with Defendant, Jeff offered to prank Nelson for Plaintiff as a form of redress regarding Nelson's inappropriate comments to Plaintiff.  Subsequently, Jeff's prank ideas were also insulting to Plaintiff.

20. Specifically, as a prank, Jeff proposed for Plaintiff to have one of her Mexican friends come in and act as if they were training to replace Nelson, as Nelson has stated, "Mexicans are in this country to take American jobs."

21. Specifically, as a prank, Jeff proposed to tell Nelson that President Trump was on the phone and that he wanted Nelson's advice on what to do about Mexicans.

22. During Plaintiff's employment with Defendant, Jeff would attempt to initiate and carry on with explicit conversations about sex with Plaintiff and other females employed by Defendant. Plaintiff and the other females would try not to engage him, hoping he would stop, but he would continue with the conversations.

23. On or about July 15, 2019, Jeff accused Plaintiff of padding her hours to her benefit, totaling an amount of $10,000. Jeff asked Plaintiff how they were going to resolve this, stating, "This is not good for me and it's not good for you . . . how can we fix it?" When Plaintiff inquired as to what Jeff meant by that, he stated, "You tell me how we can fix it . . . you know how," which she took to infer that if she had sexual intercourse with him the issue would be resolved.

24. On or about July 15, 2019, Plaintiff told Jeff she would pay him back if he could prove that she took the money, knowing that he could not because she did not take any money.

25. On July 15, 2019, Plaintiff was constructively discharged from employment with Defendant as she could not bear the harassment to which she was subjected.

26. After being discharged, Plaintiff heard from numerous customers that Jeff was saying Plaintiff was fired for stealing $10,000.00. Subsequently, Jeff started telling customers the total he alleges was stolen by Plaintiff was $30,000.00.

27. Plaintiff was never paid for her last week employed with Defendant.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

28. Plaintiff was an employee pursuant to 42 U.S.C. § 2000e(f).

29. Defendant is an employer pursuant to 42 U.S.C. § 2000e(b).

30. As set forth in the Factual Allegations above, Plaintiff belongs to protected classes as a female of Mexican descent.

31. Plaintiff was subjected to unwelcome harassment through remarks of a sexual nature and discrimination in the form of derogatory remarks based on her national origin made by Defendants Jeff and Nelson.

32. The unwelcome sexual harassment and discrimination experienced by Plaintiff was sufficiently severe or pervasive enough to alter the terms and conditions of employment, creating a hostile work environment.

33. As set forth in the Factual Allegations, Plaintiff reported Defendant

Nelson's comments to Defendant Jeff, but he took no action to correct the situation and the comments continued.

WHEREFORE, Plaintiff demands damages for lost wages, benefits, back pay and other remuneration; all other compensatory damages allowable under law; emotional distress damages; attorney's fees and costs; and any other relief the Court deems just and proper.

## COUNT II
## DEFAMATION

Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

34. As set forth in the Factual Allegations, Defendant Jeff made false statements, telling customers that Plaintiff stole $10,000.00-30,000.00.

35. These false statements were repeated to several customers.

36. Plaintiff suffered damages as a result of the statements made by Defendant Jeff regarding her stealing $10,000.00-30,000.00.

WHEREFORE, Plaintiff demands damages for lost wages, benefits, front pay and other remuneration; all other compensatory damages allowable under law; prejudgment and post judgment interest; attorney's fees and costs; and any other relief the Court deems just and proper.

## COUNT III
## UNPAID WAGES

Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

37. As set forth in the Factual Allegations, Plaintiff worked but was not paid for her last of week of employment with Defendant.

38. Plaintiff has been harmed as a result of Defendant's willful failure to pay her final week of pay.

39. Pursuant to Fla. Stat. §448.08, Plaintiff is entitled to recover costs and fees if she prevails on this claim for unpaid wages.

WHEREFORE, Plaintiff demands damages for lost wages, attorney's fees and costs; and any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 11, 2019

Respectfully submitted,

*/s/Beth Coke*
Beth Coke
Fla. Bar. #70726
Beth@cokeemploymentlaw.com
Coke Employment Law
131 N. 2nd Street, Suite 204
Fort Pierce, Fl. 34950
Telephone: (772) 252-4230
Facsimile: (772) 252-4575
Attorney for Plaintiff